IN THE UNITED STATES COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD WAYNE DYE | : |
| 192 WILLIAMS PLACE | : |
| COLUMBUS, MS 39702 | : |
| | : |
|    Plaintiff, | : |
| | : |
| v. | :    Civil Action No. |
| | : |
| MIKE POMPEO, SECRETARY | : |
| UNITED STATES | : |
| DEPARTMENT OF STATE | : |
| 2201 C STREET, NW | : |
| WASHINGTON, DC 20520 | : |
| | : |
| MIRACLE SYSTEMS | : |
| 1621 NORTH KENT STREET | : |
| SUITE 1000 | : |
| ARLINGTON, VA 22209 | : |
| | : |
|    Serve:  Sandesh Sharda, CEO | : |
|              1621 North Kent Street | : |
|              Suite 1000 | : |
|              Arlington, VA 22209 | : |
| | : |
|    Defendants. | : |

## **COMPLAINT**

COMES NOW, Plaintiff, Richard Dye, contractor with the United States Department of State (DOS) and contracting with Miracle Systems, by and through his undersigned counsel and hereby sues Mike Pompeo, Secretary, United States Department of State, in his official capacity, and Miracle Systems, LLC for retaliation in violation of Title VII of the Civil Rights Act of 1964, and in support thereof, hereby states as follows:

## PARTIES

1.     Plaintiff Richard Dye is a male adult resident of the State of Mississippi and at all times relevant hereto was an employee of the U.S. Department of State and Miracle Systems as a K-9 Mentor on the Antiterrorism Assistance (ATA) Program located in Kabul, Afghanistan.

2.     Defendant, the U.S. Department of State (DOS), is a federal agency located in Washington, D.C.

3.     Defendant Miracle Systems is a Commonwealth of Virginia LLC with its principal place of business located in the Commonwealth of Virginia and a contracting company working for the DOS.  Defendant Miracle Systems regularly transacts business in the District of Columbia.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C.A. §1331 for claims arising under federal law, i.e, 42 U.S.C. §2000(e) et seq.

5.     At all times relevant to this case, Defendant DOS has been an employer and has engaged in an industry affecting commerce, has employed fifteen or more employees, and otherwise has been an employer, within the meaning of 42 U.S.C. Sec. §2000(b)

6.     Venue in this matter is proper based upon 28 U.S.C.A. §1391.

## FACTS OF THE CASE

7.     Plaintiff is and at all times relevant hereto was a contractor with the U.S. Department of State since 2005.

8.     Plaintiff's contracting company is Miracle Systems, LLC.

9.     Miracle Systems is under contract with DOS through the end of 2021 to provide services, including but not limited to the position of K-9 Mentor on the Antiterrorism Unit (ATA) and other services in Kabul, Afghanistan.

10.    Plaintiff holds the position of K-9 Mentor on the Antiterrorism Assistance (ATA) Program.

11.    Jeffrey Mayberry was Miracle Systems Resident Program Manager and supervised Plaintiff until January 2018.

12.    Willy Straubhaar, is a Program Manager at Miracle Systems.

13.    Sam Brooks, Miracle Systems Deputy Resident Program Manager, is Plaintiff's immediate supervisor.

14.    Anne Brunn served as the United States Department of State Contracting Officer's Representative (COR) from January 2018 to April 2018.

15.    Mike Otis, United States Department of State Special Agent-Diplomatic Security Service, Unit Chief South Asia Office of Antiterrorism Assistance, directed Plaintiff's work in Afghanistan.

16.    Mike Otis, DOS Special Agent-Diplomatic Security Service, and Miracle Systems Resident Program Manager Jeffrey Mayberry are close friends and co-workers.

17.    Prior to January 2018 and ongoing at all times relevant to this Complaint, Miracle Systems' Resident Program Manager Jeff Mayberry created a hostile working environment for Plaintiff and others.

18.    Conduct of Jeff Mayberry included derogatory remarks, simulated masturbation, repeatedly telling a subordinate that he has a "loaded .38 cal pointed at his head with the hammer back," placing his foot at the groin area of a subordinate, and belittling instructors in front of the classroom.

19.    Mr. Mayberry's hostile actions made Plaintiff feel like nothing and would belittle and ridicule him at every opportunity.

20.     In addition, Mr. Mayberry physically intimidated Plaintiff by using body posture and facial expressions as if he was testing the Plaintiff to establish dominance.

21.     Furthermore, Mr Mayberry forced the Plaintiff and others to watch him verbally abuse Mike Kuzmjak which caused Mr. Kuzmjak emotional anguish and physical discomfort.

22.     Mr. Mayberry's actions caused Plaintiff to second guess his work and forced co-workers to take sides with Mr. Mulberry or suffer his wrath.

23.     Through all of these actions, including the fact that Mayberry constantly spoke ill of almost everyone from his superiors to his subordinates, Mr. Mayberry caused Plaintiff's work environment to become toxic and unbearable.

24.     On or before December 13, 2017, Plaintiff went to his first-line supervisors, Sam Brooks and Mike Kuzmjak, to lodge a complaint against Resident Program Manager Jeffrey Mayberry.

25.     As a result, Plaintiff was directed by Deputy Resident Program Manager Sam Brooks and team leader, Mike Kuzmjak to file his complaint with the Human Resources Department of his contracting company, Miracle Systems.

26.     Plaintiff shared with Brooks and Kuzmjak that he was worried about reprisal.

27.     Brooks and Kuzmjak told Plaintiff that he was safe and that Human Resources was aware of Mr. Mayberry's actions.

28.     On December 15, 2017, Plaintiff filed a complaint with Miracle System's Human Resources Department against Mr. Mayberry for creating a hostile work environment through his constant bullying and toxic actions.

29.     As Program Manager at Miracle Systems, from December 2017 to late January 2018, Mr. Straubhaar performed the investigation into the complaint of a hostile work environment involving Mr. Mayberry.

30.     Through interviews with multiple staff members, Mr. Straubhaar found that Mr. Mayberry was not properly managing employees or documenting issues.

31.     As a result, on January 30, 2018, Mr. Mayberry was terminated.

32.     Jeff Mayberry learned about Plaintiff's complaint against him in February 2018 just before Plaintiff was terminated.

33.     Only weeks later, on February 13, 2018, in a letter sent by President and CEO Sandesh Sharda, Plaintiff was terminated from his contract position as a Mentor on the Antiterrorism Assistance (ATA) Program.

34.     The termination letter includes language which provided, "This letter is to inform you that effective Monday, February 12, 2018, your contracted position as a Mentor on our Antiterrorism Assistance (ATA) Program in Afghanistan has concluded. As per direction from the ATA Contracting Officer Representative (COR) (Brunn), you are not requested to re-deploy to Afghanistan." Upon receiving this letter, Plaintiff requested a written reason for terminating but never received a response.

35.     At the same time, Miracle Systems Program Manager Willy Straubhaar told Plaintiff by phone that he was being terminated pursuant to direction of Department of State Special Agent-Diplomatic Security Service, Unit Chief South Asia Office of Antiterrorism Assistance Mike Otis and the Department of State Contracting Officer's Representative (COR) Anne Brunn.

36.     Prior to his termination, Plaintiff received only positive evaluations for his work performance and at no point while working under Mr. Mayberry did he ever receive counseling regarding his performance.

37.     Prior to Mr Mayberry's employment with Miracle Systems, Plaintiff was referred to at work as the canine subject matter expert.

38.     When asked by Plaintiff for the basis for his termination, Defendant Miracle Systems employee Mr. Straubhaar told Plaintiff that Miracle Systems was acting pursuant to the Department of State and that DOS stated that it was going "in a new direction."

39.     After the internal investigation, the only Miracle Systems' employees to be terminated were Mr. Mayberry himself and those involved in the EEO complaint against Mr. Mayberry, including Plaintiff.

40.     At the time of his termination in February 2018, Plaintiff had an expectation of continued deployment as he was asked by Miracle Systems to submit his passport for a new visa (at his own cost) and that travel for the his next rotation was being completed for March through May by Miracle Systems.

41.     Everyone at Miracle Systems, including the Plaintiff and the leadership in Kabul, had the expectation that they were being redeployed. Plaintiff's next rotation was set for March through May 2018.

42.     Following Plaintiff's termination, DOS COR Anne Brunn stated that she became concerned that not offering Plaintiff redeployment would look like retaliation for his EEO complaint against Mr. Mayberry.

43.     On or about February 26, 2018, made contract with his EEO counselor regarding his formal charge of discrimination (reprisal/retaliation) related to his termination from employment, Agency No. DOS 137-18.

44.     More than 180 days has passed since Plaintiff filed his EEO Charge and the charge has not been resolved.

45.     In April 2018, Defendants rehired Plaintiff and gave him a redeployment date of July 2018.

46.     In further discrimination and retaliation, Defendants held Plaintiff to a different standard upon being considered for rehire. Although he was informed that all mentors were being re-evaluated, only Plaintiff underwent a subsequent review before being rehired.

47.     Plaintiff engaged in protected activity when he filed a complaint against his supervisor Mr. Mayberry for creating a hostile work environment.

48.     Despite being rehired for a portion of 2018, Plaintiff was again denied redeployment in February, 2019 as a further act of reprisal and retaliation.

49.     Plaintiff filed a follow up charge related to his second non-redeployment/termination.

50.     Plaintiff's wrongful termination caused a great personal financial burden as he did not work for more than five months.

51.     As a result, he lost in excess of $150,000.00 in compensation and continues to lose compensation each time he is not redeployed.

52.     Due to the stress of his wrongful termination, Plaintiff lost 20 pounds and suffered from constant stomach pain, sleepless nights and migraine-type headaches.

53.     The Plaintiff is unable to seek medical treatment because it could result in him becoming non-deployable, causing greater monetary loss and more stress. However, he constantly takes over-the-counter medication for headaches and sleep aids along with medication for the constant stomach issues.

54.     The Plaintiff is black-balled and once he is removed from the current contract, he will no longer be able to work on any future DOS contract. He estimates his financial losses alone, once removed from his current position, will be several million because DOS contract work, without Defendants' retaliatory action, should continue for many more years.

## COUNT I
## RETALIATION

55.     Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

56.     Pursuant to Title VII, it is unlawful for an employer to retaliate against an employee who has engaged in protected activity.

57.     Up until the time he was terminated in January 2018, Defendant Miracle Systems Resident Program Manager Jeff Mayberry created a hostile working environment for Plaintiff and others.

58.     Mayberry used physical and emotion tactics to create a toxic work environment which negatively affected Plaintiff and others.

59.     Plaintiff was advised by Defendant Miracle Systems employees to file a complaint alleging harassment and hostile working environment created by his supervisor Jeff Mayberry.

60.     On December 15, 2017, Plaintiff filed the complaint with Defendant Miracle Systems' Human Resources Department.

61.     Plaintiff engaged in protected activity under Title VII when he filed his EOE complaint against Mr. Mayberry with Defendant Miracle Systems.

62.     While Miracle Systems concluded there was no hostile work environment, filing an EEO complaint is protected activity even if the underlying discrimination allegation is unsuccessful.

63.     Plaintiff told the Defendants' advising Miracle System employees that he was worried about reprisal only to be told that he was safe from retaliation and that Human Resources was aware of Mr. Mayberry's actions.

64.     Nonetheless, in retaliation for filing the complaint against his supervisor, in February 2018, Defendants Miracle Systems and DOS terminated Plaintiff's next deployment.

65.     Terminating Plaintiff's next deployment in retaliation for filing the complaint constitutes materially adverse action by Defendants Miracle Systems and DOS.

66.     As evident in Plaintiff's stated fear of retaliation for filing a complaint, Defendants' action of terminating Plaintiff would deter a reasonable person from filing a complaint.

67.     At no point while working under Mr. Mayberry did Plaintiff ever receive counseling regarding his performance.

68.     The false allegations regarding Plaintiff's work performance made by Jeff Mayberry, which only came to light pursuant to the investigation into Plaintiff's complaint against him, rise to the  level of pretext for retaliation on the part of the Defendants.

69.     In addition, there is suspiciously close timing between December 15, 2018, when Plaintiff filed his complaint against Jeff Mayberry and February 12, 2018, when he was terminated by Defendant Miracle Systems per direction of the Defendant Department of State COR.

70.     That Defendants gave no specific or valid reason at time they terminated Plaintiff also raises the basis for the action to the level of pretext.

71.     Adding to the suspect timing of Plaintiff's termination is the fact that   Jeff Mayberry, a close friend and co-worker of Defendant Department of State employee Mike Otis, found out about the complaint against him in February 2018 just before Plaintiff was terminated.

72.     Furthermore, at the time of his termination in February 2018, Plaintiff had an expectation of continued deployment as he was asked by Defendant Miracle Systems to submit his passport for a new visa (at his own cost) and that travel for his next rotation was being completed by Defendant Miracle Systems for March through May 2018. The Defendants active steps towards Plaintiff's next deployment after February 2018 show that Defendants' decision to terminate Plaintiff was a last-minute action made in retaliation for his EEO filing against Defendant Jeff Mayberry.

73.     That Plaintiff fully expected redeployment due to Defendant's securing flights and visas also highlight the falsity of Department of State COR Anne Brunn's statement that Plaintiff was not terminated in February 2018 but completed his deployment and had no expectation of return.  In fact, Defendant's actions show that both Defendant and Plaintiff fully expected Plaintiff to re-deploy from March until May 2018.

74.     More pretext for Defendants' retaliatory action is demonstrated by Department of of State COR Anne Brunn's statement that she was concerned that, due to the timing of Plaintiff's termination, it would appear that Plaintiff was terminated due to retaliation for filing an EEO complaint with Miracle Systems over Mr. Mayberry's hostile working environment.

75.     Pursuant to the filing of his EEOC complaint, Plaintiff was rehired and offered redeployment for July 2018. However, even at this juncture, Plaintiff was held to a different and

higher standard than other Miracle Systems employees. When it came to being rehired, Plaintiff was informed that all mentors would be vetted when, in fact, only he was vetted. This constituted blatant and continued discrimination by Defendants and subjected Plaintiff to further retaliation after his wrongful termination.

76.     Lastly, there was no legitimate reason for Plaintiff's termination. This is clear from the failure of all Defendants to take responsibility for the decision to terminate Plaintiff. While Department of State COR Anne Brunn said it was not their decision, Miracle Systems Mr. Straubhaar stated that it was indeed the Department of State COR's [Ms. Brunn's] decision. In addition, Miracle Systems own CEO Mr. Sharda told investigators to ask his own employee Mr. Straubhaar about the termination, despite Mr. Sharda's exit letter to the Plaintiff which provided that he was not going to be redeployed per direction of the Department of State.

77.     Clearly, once the EEOC investigation into Defendants' retaliatory action began in February 2018, Defendants changed their tune regarding Plaintiff's termination. While Miracle Systems' internal investigation revealed Jeff Mayberry's very poor management, Defendants nonetheless choose the retaliatory action of removing all parties involved in Plaintiff's complaint, including both Plaintiff and Jeff Mayberry.

78.     The materially adverse actions taken by the Defendants Department of State and Miracle Systems against Plaintiff for taking part in protected activity are retaliatory and unjust and evidenced by the suspect timing of his termination, the lack of a stated, legitimate reason for his termination, the failure of Defendants to take responsibility for Plaintiff's termination, and that the plaintiff was rehired soon after filing his EEOC claim.

79.     All of these motivating factors form the basis for Defendants' retaliatory action in terminating Plaintiff in February 2018 for filing his complaint against Jeff Mayberry.

80.    Plaintiff has suffered and continues to suffer harm and damages as a result of Defendant's retaliation.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment favor of Plaintiff and against Defendant for

A.    On Count I (Retaliation), economic damages in the amount of $150,000.00 and Compensatory Damages in the Amount of $300,000.00;

B.    Award Plaintiff all of his fees and costs associated with this matter, including his attorneys' fee; and

C.    Such other and further relief as this Court deems necessary based upon the facts and circumstances of this case.

## JURY TRIAL

Plaintiff requests that all matters in this case be tried by a jury.


Dated: June 5, 2019                    Respectfully Submitted,

                                       /s/Neil S. Hyman_____
                                       Neil S. Hyman, Esquire
                                       Federal Bar ID: 465047
                                       Law Office of Neil S. Hyman, LLC
                                       4520 East West Highway, Suite 700
                                       Bethesda, Maryland 20814
                                       301-841-7105 (p)
                                       neil@neilhymanlaw.com
                                       *Counsel for Plaintiff*